**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09CV287-02-W
(3:05CR402-2-W)**

| | |
|---|---|
| **RAYMOND ANTHONY LONDON,**  )<br>    Petitioner,              )<br>                              )<br>        v.                    )<br>                              )<br>**UNITED STATES OF AMERICA,**  )<br>    Respondent.               )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence, filed July 14, 2009. For the reasons stated herein, Petitioner's Motion will be <u>denied</u> and <u>dismissed</u>.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The record of Petitioner's underlying criminal case reflects that on December 13, 2005, he and two other individuals were named in an Indictment which charged that Petitioner had conspired to possess with intent to distribute at least 50 grams of cocaine base, commonly known as "crack" cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count One); that he had possessed at least five grams of crack with intent to distribute those substances and had aided and abetted that offense, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Two); that during and in relation to a drug trafficking crime, he had used and carried firearms in furtherance of such crimes, and had

aided and abetted that offense, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Three); and that Petitioner had possessed firearms after previously having been convicted of one or more felonies, in violation of 18 U.S.C. § 922(g)(1) (Count Five). (Case No. 3:05cr402-2-W). On March 27, 2006, Petitioner was arraigned on the foregoing charges, at which time he entered "not guilty" pleas and requested a jury trial.

On July 14, 2006, the first of Petitioner's two co-defendants, Marshari Teal, entered guilty pleas to three of the charges in the Indictment (Counts One, Three and Four[1]). (Case No. 3:05cr402-2-W, Doc. No. 38: Teal Plea Agreement, ¶ 1). By that Agreement, Teal also promised to cooperate fully with the Government and, if asked to do so, to provide truthful testimony in any proceeding, including proceedings against any co-defendants. (Case No. 3:05cr402-2-W, Doc. No. 38: Teal Plea Agreement, ¶ 23-(b)). On August 16, 2006, Petitioner's other co-defendant, Edward Woods, entered a guilty plea to Count One pursuant to a Plea Agreement which also obligated him to provide truthful testimony in any and all proceedings if requested by the Government to do so. (Case No. 3:05cr402-2-W, Doc. No. 45: Woods Plea Agreement, ¶ 23(b)).

On October 19, 2006, the Government filed a Notice Pursuant to Federal Rule of Evidence 404(b), informing Petitioner of its

---

[1]Count Four charged Teal with a violation of 18 U.S.C. § 922(g)(1).

2

intent to introduce evidence about other offenses committed by him which were not charged in the instant Indictment, including testimony relating to his post-Indictment arrest on February 7 2006, for trafficking in crack cocaine. (Case No. 3:05-cr402-2-W, Doc. No. 53).

On October 25, 2006, defense counsel filed a Response to the Government's 404(b) Notices, contending that the Government had failed to demonstrate that its proposed 404(b) evidence was material to any element of the offenses which Petitioner was facing; that the danger of undue prejudice outweighed the probative value of the proposed evidence; that the evidence was irrelevant and inadmissible; and that the evidence otherwise constituted inadmissible hearsay. (Case No. 3:05cr402-2-W, Doc. No. 56).

On October 31, 2006, the Government filed Memorandum of Law more fully articulated its position under Rule 404(b). (Case No. 3:05cr-402-2-W, Doc. No. 58). The Government's Memorandum contended that the proposed evidence was relevant to Petitioner's intent to conspire to sell drugs; it constituted a continuation of the pattern of activity which formed the basis of the conspiracy charge; and that it showed the lack of a mistake. As to its necessity, the Government argued that the evidence was probative of the element of knowledge of the charged misconduct, it furnished part of the context of the conspiracy charge, and it

showed evidence of a consistent modus operendi.  Last, the Government argued that the proposed evidence was reliable in that it included testimony from the Raleigh law enforcement officer who arrested Petitioner.

Petitioner's trial was commenced on November 2, 2006.  At the outset of that proceeding, the Court entertained initial arguments on the admissibility of the subject 404(b) evidence. (See Transcript of Trial Testimony 4-13, filed October 29, 2007, hereafter "Trial Tr."). After hearing from counsel, the Court advised that it would re-visit the issue and make a determination at the time the Government was ready to seek admission for the evidence. (Trial Tr. 13).

Thereafter, the Government presented testimony and other evidence from Petitioner's co-defendants, Edward Woods and Marshari Teal, from Teal's former live-in girlfriend, Lottie James, from the case agent, Terry Tadeo, from a Charlotte-Mecklenburg Police Officer, James Hetrick, who participated in a residential search which revealed the firearm evidence against Petitioner, and from a Raleigh Police Officer, Kyle Williams, who participated in the Raleigh buy-bust operation with which Petitioner also then was charged. By the witnesses' testimony, the Government established the existence of a conspiracy which began in Gaston County in early 2005, thereafter spread to Charlotte and elsewhere, and continued to operate until February

2006, when Petitioner was arrested on the Raleigh charge.

Woods was the group's leader. (Trial Tr. 66). During the life of the conspiracy, Woods purchased between one to two kilograms of powder cocaine per week, cooked it into larger quantities of crack cocaine, packaged those drugs, and both sold them and supplied some of those drugs to Marshari Teal and others for sale. (Trial Tr. 65-68, 71, 74, 275).

Petitioner, whom Woods said he had known for about four to five years, became Woods' "right-hand man" in March or April of 2005, when Petitioner moved in with Woods and joined the conspiracy. (Trial Tr. 67-70, 84-85). Testimony established that Petitioner helped Woods weigh and package crack on numerous occasions. (Tr. 70-71, 169-71, 294). Petitioner helped Woods trans-port crack to various persons, including Petitioner's brothers, who sold those drugs for Woods. (Trial Tr. 71-73, 82). Petitioner also sold crack for Woods and, eventually, would obtain drugs from Woods which Petitioner sold for his own profit. (Trial Tr. 71, 85-86). In addition, testimony established that Petitioner served as an enforcer/protector for the conspiracy's operations. (Trial Tr. 87-88, 91).

On an occasion in late April or early May 2005 when Teal was robbed by one of his customers, Woods and Petitioner armed themselves, traveled from Gastonia to Charlotte, met with Teal, and the three then went looking for the robber in order to retaliate

5

for the robbery. (Trial 73-80, 178-183, 278-280). When their search proved unsuccessful, Petitioner agreed to remain armed and to spend time camped out at Teal's apartment in order to protect Teal from any future robberies. (Trial Tr. 80-81, 185-188). Approximately one week later, however, Petitioner moved back to Woods's apartment in Gastonia. (Trial Tr. 83).

On or about May 5, 2005, Teal's apartment was searched by local law enforcement officers who were looking for a homicide fugitive. (Trial Tr. 15-18). On that occasion, the officers found the fugitive along with drugs, drug paraphernalia, cash and at least one of the weapons which Petitioner and Woods previously had brought to Teal's apartment. (Tr. 23-25, 40-49, 190-194, 284-286). Following their arrest, Teal and his girlfriend, Lottie James, became informants, and Teal facilitated multiple one-ounce purchases of crack cocaine from Woods in Petitioner's presence. (Trial Tr. 155-163, 199-205).

At some later point during either June or July 2005, Petitioner returned to Teal's home for approximately one month, during which time he made his own weekly purchases of ½ to one ounce-sized packages of crack cocaine from Woods. (Trial Tr. 85-86, 195-96). Petitioner then sold user quantities of crack from Teal's apartment. (Trial 86-87). However, Woods eventually directed Petitioner to come bact to Gastonia after Teal complained about having to share his client base and his profits

6

with Petitioner.  (Tr. 87-88).

Also during the life of the conspiracy, Petitioner made nearly daily trips with Woods to a residence in Lincolnton, North Carolina, where they supplied and sold crack from an apartment belonging to Woods' friend.  (Trial 89-90).  On the occasions when the two men went outside the apartment to sell crack, Petitioner was armed with a handgun.  (Trial Tr. 91).

Last, the Government's evidence established that in October or November of 2005, Woods directed Petitioner to re-locate to Raleigh, North Carolina in order to continue selling crack cocaine.  (Trial Tr. 93-95).  On February 7, 2006 -- which was after this Indictment was filed but before Petitioner's arrest on it -- he and a woman were arrested by Raleigh Police Officers after Petitioner sold $20.00 worth of crack to a police informant.  (Trial Tr. 321-323).  The Government's evidence showed that upon his arrest, Petitioner was found in possession of the $20.00 "buy money," and Petitioner's jacket had 9.2 additional grams of crack in one of its pockets.  (Trial Tr. 323).  The evidence further showed that officers found a digital scale, plastic sandwich bags, and mail addressed to Petitioner in the room which he and the woman were occupying at the time of their arrest. (Trial Tr. 326-333).

Petitioner declined to testify, or to offer his own evidence.  Following its deliberations, on November 3, 2006, the

jury convicted Petitioner of all of the charges. Specifically, the jury found that Petitioner had conspired to possess with intent to distribute at least 50 grams of crack under Count One, he had possessed with intent to distribute at least five grams of crack under Count Two; and it found him guilty of the two firearms offenses charged in Counts Three and Five. (Case No. 3:05cr402-2-W, Doc. No. 62: Jury Verdict).

Accordingly, on August 7, 2007, the Court held Petitioner's Sentencing Hearing. During that proceeding, the Court adopted the calculations set forth in Petitioner's Pre-Sentencing Report. After receiving Agent Tadeo's testimony and recalling the testimony of the witnesses at trial, the Court concluded, using conservative estimates, that Petitioner could be held accountable for involvement with at least 1.5 kilograms of crack cocaine. (Sent'g. Tr. 26-28). Thus, the Court determined that Petitioner's Total Offense Level for all counts of conviction was 38 and his Criminal History Category was IV, thereby exposing Petitioner to a range of 384 to 465 months imprisonment. (Sent'g. Tr. 28). Ultimately, the Court sentenced Petitioner to a total of 465 months imprisonment, to wit: to 405 months on Counts One and Two, a concurrent term of 120 months imprisonment on Count Five, and to a consecutive term of 60 months imprisonment on Count Three. (Sent'g. Tr. 34).

Petitioner timely appealed his convictions to the Fourth

8

Circuit Court of Appeals. On appeal, Petitioner attacked the sufficiency of the evidence for his convictions by claiming that since officers did not find guns or drugs on his person during the search which gave rise to his Indictment and that Woods actually was the drug supplier; therefore, this Court erred in denying his Rule 29 Motion. United States v. London, 272 Fed. Appx 293 (4th Cir. April 10,2008). However, the Court of Appeals determined that the trial transcript contained sufficient evidence to support each of Petitioner's convictions; therefore, this Court properly denied his Rule 29 Motion. Id. at 294. Accordingly, the Court of Appeals affirmed Petitioner's convictions. Id.

Undaunted, Petitioner now has returned to this Court on the instant Motion to Vacate, first arguing that this Court abused its discretion in allowing evidence and testimony concerning his post-Indictment Raleigh arrest, and his attorney was ineffective for having failed "to object and re-raise [this] claim at the end of trial, at sentencing and again on appeal. Second, Petitioner argues that the quantity of drugs which were attributed to him at sentencing was not supported by a preponderance of the evidence, therefore, he was subjected to a due process violation by the Court's use of it. Third, Petitioner argues that he was subjected to a sentencing disparity when this Court "reject[ed] the avenue of fair sentencing among codefendants." Last, Petitioner

9

argues that his rights were violated by the lack of a plea offer to him.

## II. ANALYSIS

### 1. This Court is authorized to promptly review and dismiss any § 2255 motion which does not contain a claim that entitles the petitioner to relief.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court carefully has reviewed Petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that Petitioner is not entitled to relief on any of his claims. Therefore, the instant Motion to Vacate must be summarily dismissed.

### 2. Petitioner's second and third claims clearly are procedurally barred.

Taking them out of turn, Petitioner's second claim essentially alleges that the evidence was insufficient to support his sentence, and his third claim alleges that he was subjected to

10

sentencing disparity.  However, in United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000), the Circuit Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack"; citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

However, Petitioner does not even attempt to argue cause or prejudice, or any other basis for excusing his procedural default of these two claims.  In fact, the Court notes that while Petitioner does argue that his attorney was ineffective on certain other unrelated grounds, he does not make any such allegation in connection with either of these claims.  Consequently, the Court finds that Petitioner is not entitled to a review of his second and third claims as they are procedurally defaulted without excuse.

### 3. **Despite his claim of ineffective assistance, Petitioner's claim that the Court erred in admitting the 404(b) evidence also is procedurally defaulted**.

Similarly, Petitioner's claim that this Court erroneously permitted the Government to introduce evidence of his post-Indictment arrest in Raleigh also is procedurally defaulted without excuse. See Mikalajunas, supra. In the alternative, however, even if Petitioner can show that his attorney's decision not to raise the subject claim at sentencing and on appeal constitutes cause for his procedural default, he still is not entitled to proceed with the claim because he cannot establish that he suffered any prejudice from counsel's decision not to raise it.

Federal Rule of Evidence 404(b) permits evidence of a defendant's prior crimes, wrongs, or other "bad acts" to prove "motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake" when such evidence is relevant to an issue other than character, the evidence is necessary, the evidence is reliable, and the probative value of such evidence is not substantially outweighed by its prejudicial value. See generally United States v. Jeffries, 304 Fed. Appx 229, 231 (4th Cir. Dec. 29, 2008); United States v. Uzenski, 434 F.3d 690, 710-11 (4th Cir. 2006); United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993); United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991). Indeed, as the Government correctly noted in one of

its pre-trial memoranda to the Court (Case No. 3:05cr402-2, Doc. No. 58), the Fourth Circuit has stated that Rule 404(b) "is an inclusive rule, allowing evidence of other crimes or acts except those which tend to prove only criminal disposition." United States v. Queen, 132 F.3d 991, 994-95 (4th Cir. 1997).

Similarly, evidence of subsequent conduct -- such as is at issue here -- also is admissible under Rule 404(b), if it otherwise meets the requirements set forth above. United States v. Mohr, 318 F.3d 613, 617-21 (4th Cir. 2003); United States v. Hadaway, 681 F.2d 214, 217-18 (4th Cir. 1982). The decision concerning the admission of evidence under Rule 404(b) is committed to the sound discretion of the Court, and is only subject to reversal upon a showing that it was arbitrary or irrational. United States v. Haney, 914 F.2d 602, 607 (4th Cir. 1990). Queen, 132 F.3d at 995.

Prior to trial, the Government filed a memorandum stating that the evidence of Petitioner's post-Indictment drug sale and arrest, including his possession of a digital scale and plastic baggies, was relevant to establish his prior intent to conspire with to sell crack, to rebut Petitioner's contention, as implied by his "not guilty" pleas, that he was not involved in the charged offenses, and to show a continuation of his conspiratorial conduct. The memorandum further stated that the evidence was necessary to show Petitioner's knowledge of the charged offenses,

13

and to establish a part of the context of the conspiracy charge. Last, the memorandum stated that the evidence was reliable as it included the testimony of one of the law enforcement officers who participated in the subject arrest and search.

Petitioner's chief attacks on the Court's admission of the subject evidence are that the Raleigh events occurred "outside of the conspiracy," and the resulting charge subsequently was dismissed. However, as was already noted, the law clearly permits the admission of evidence concerning conduct which occurred <u>after</u> the time of the charged offense. See Hadaway, supra, 681 F.2d at 217 (approving trial court's admission of 404(b) evidence concerning the defendant's arrest for an offense which was similar to the charged offense and which occurred 18 months after the charged conduct).

In fact, the Hadaway Court found that such evidence was "highly probative of prior intent" to show that "one has thought in a particular illegal way over a period of time is evidence that one's thought patterns had already been so developed and were so operating on another previous occasion." Thus, the evidence in this case was not subject to exclusion merely because it related to matters which occurred after the time of the offenses charged in this case.

Likewise, the fact that the Raleigh charge subsequently was dismissed also does mean that this Court's admission of that

evidence was erroneous.  To be sure, the language of Rule 404(b) clearly provides for the admission of evidence concerning bad acts and conduct; therefore, admission is not limited to conduct for which a defendant stands convicted.  In sum, the fact that the Raleigh charge subsequently was dismissed is of little consequence since the subject evidence otherwise met the test of reliability.

Moreover, to the extent that Petitioner is attempting to challenge the admission of the subject evidence on the ground that it was unduly prejudicial, the Court rejects that argument. Indeed, it goes without saying that if evidence is relevant, necessary and reliable, it also is potentially prejudicial. However, Rule 404(b) only requires exclusion of unduly prejudicial evidence.  Fed.R.Evid. 404(b).  As to this point, the Fourth Circuit has stated that the risk of undue prejudice resulting from the admission of 404(b) evidence can be removed when the trial court properly instructs the jury on the uses of the evidence.  See Queen, supra 132 F.3d at 997 (holding that the fear a jury may improperly use Rule 404(b) evidence subsides when the trial judge gives the jury a limiting instruction regarding proper use of evidence).

As requested by the Government, this Court reduced the risk of any undue prejudice to Petitioner by giving the jury limiting instructions which properly advised that Petitioner was on trial

15

only for the offenses charged in the Indictment, and that the evidence of similar acts was to be considered only for the purpose of determining his intent or knowledge of the charged conduct, or to determine the absence of a mistake. (Case No. 3:05cr402-2-W, Doc. No. 61: Jury Instructions). Therefore, this argument is baseless.

To the extent that Petitioner is attempting to challenge the admission of the subject evidence on the ground that this Court failed fully to evaluate the admissibility of the evidence before allowing the jury to hear it, that claim is belied by the record. That is, contrary to Petitioner's contention that the evidence was admitted without the Court "revisit[ing]" his arguments, a review of pages 251 through 269 in the trial transcript establishes that the Court engaged the attorneys in lengthy discussions concerning the admissibility of the subject evidence before admitting it. Based upon the foregoing, the Court finds that the 404(b) evidence properly was admitted against Petitioner; therefore, he cannot establish any prejudice from counsel's decision not to raise this claim on appeal.

### 4. **Petitioner's last claim of a "failure to offer Plea Bargain" also must fail**.

By this claim, Petitioner argues that his constitutional rights were violated because "either the prosecution failed to offer a plea bargain, which would be vindictive and prosecu-

toruial [sic] misconduct, because he meets the burden of establishing a reasonable probability that he could have received a more lenient sentence; or, counsel for defense failed to inform this Petitioner of a plea, period." Nevertheless, in addition to this Court recognizing that Petitioner also has defaulted this claim by his failure to raise it on appeal, the Court observes that he also has conceded that there simply is no legal entitlement to a plea agreement. Therefore, even if the merits of the instant claim could be reached by the Court, it still would have to be rejected because the Government's choice not to make a plea offer to Petitioner does not constitute misconduct or vindictiveness in any event.

Second, Petitioner's assertion that his attorney may have failed to inform him of a plea offer is mere speculation which falls far short of establishing a violation of his constitutional rights. Indeed, this Court is not required to indulge Petitioner's conjecture or conclusory allegation against counsel. See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (finding that conclusory allegations are insufficient to establish prejudice under Strickland v. Washington, 466 U.S. 668 (1984).

Finally, it has not escaped the Court's attention that had Petitioner wanted to enter guilty pleas and thereby reduce his sentencing exposure, he could have done so even without a formal plea offer from the Government. That is, Petitioner could have

17

tendered guilty pleas to the subject charges and earned a corresponding three-point reduction in his Offense Level for his acceptance of responsibility. Indeed, such reduction would have been available to Petitioner even in the absence of an agreement or approval from the Government. Consequently, it is, to say the least, disingenuous for Petitioner -- who consistently has maintained his innocence -- to now claim that his rights somehow were violated because he was not given an opportunity to plead guilty pursuant to a plea agreement.

### III. CONCLUSION

Petitioner's claims are barred due to his procedural default of them and/or are factually and legally baseless. Consequently, his Motion to Vacate must be denied and dismissed.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate is **DENIED and DISMISSED**.

**SO ORDERED.**

Signed: August 10, 2009

Frank D. Whitney
United States District Judge